**Cortez Dewayne SCOTT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–83–48.**

Court of Criminal Appeals of Oklahoma.

Nov. 6, 1984.

Rehearing Denied Dec. 3 1984.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

On appeal from his conviction of Murder In The First Degree, Case No. CRF–82–171, and sentence of life imprisonment from the District Court of Tulsa County, Oklahoma, the appellant, Cortez Dewayne Scott, hereinafter referred to as defendant, raises one assignment of error. The facts of the case are as follows:

Briefly stated, the testimony at trial discloses that on January 13, 1982, Cortez Scott went to Ernest Ware's home to ask Ware to fix the ejection system in appellant's 12 gauge shotgun. Ware test fired the shotgun and determined what was causing the shotgun to jam. Ware explained to the appellant how to fix the shotgun, and showed him how to remove the spent shell. Ware gave him a pocket knife to use in removing the shells. Later that same day, around 3:30 p.m., the appellant went to the apartment of Rhonda Johnson, now deceased, at 5615 South Quaker, Apartment 6, Tulsa, Oklahoma. Rhonda Johnson and the appellant had been romantically involved, but were breaking up at the time. The appellant had the shotgun with him at the apartment, and was waiting for Ms. Johnson to come home from her job.

Ms. Johnson telephoned Floyd Ladd, a friend of eight years, to arrange for a ride home. They arrived at the apartment around 5:00 p.m. Ladd escorted Ms. Johnson into the apartment. Ms. Johnson noticed the kitchen light on, and made a quick search of the apartment. She invited Ladd into her bedroom, and they began a conversation dealing with the appellant's relationship to Ms. Johnson. At that time, the appellant jumped from the bedroom closet with the gun pointing at them. The testimony indicated that while appellant had the gun pointed at Mr. Ladd, he threatened to shoot him. Appellant turned the gun on Ms. Johnson, who had asked him to put the gun down. She said, "If you shoot anybody, you're going to jail ...;" to which the appellant replied, "I'm going to shoot you." He then shot Ms. Johnson in the lower abdomen. After firing the shot, he backed into the living room, and attempted to "break the gun down." A scuffle ensued between Mr. Ladd and the appellant. The appellant pulled a knife from his pock-

et, the same knife Mr. Ware had given him, but Ladd prevented him from using it. Eventually, Ladd let the appellant go so they could help Ms. Johnson, but the appellant fled the apartment. The Tulsa Police Department responded to the reported shooting. They found the deceased lying on the bedroom floor and the shotgun and some shells in the living room.

The appellant testified he went to Ms. Johnson's apartment to scare her back to him with the shotgun. He testified that he cocked the shotgun when he turned the gun toward Ms. Johnson and said, "Well, I'm going to shoot this shotgun because I'm going to get my woman back, because no one is going to have her but me." He then pulled the trigger and shot Ms. Johnson. The parties stipulated to the medical examiner's testimony that Ms. Johnson died of a shotgun wound to the pelvis.

Appellant's only argument is that the verdict was contrary to law. Appellant alleges that the state failed to prove the appellant acted with malice aforethought, the deliberate intention unlawfully to take away the life of another. Appellant argues that, based on the evidence, the jury should have returned a verdict reflecting a conviction for Manslaughter in the First Degree, 21 O.S.1981, § 711.

Appellant argues that the evidence showed the defendant was "mad" and was in a "rage" when he killed the deceased. He argues that the killing was in the heat of passion, and thus manslaughter. The state responds to that argument by noting there was more than competent evidence to show the appellant possessed the required malice aforethought for the murder conviction.

This court has found many times that "where there is evidence from which the jury could conclude that the defendant was guilty as charged, we will not interfere with the verdict even though there may be sharp conflicts in the evidence." *Renfro v. State*, 607 P.2d 703, 705 (Okl.Cr.1980).

In this case, the state proved that the appellant sought to have his shotgun fixed on the day of the incident; that he waited approximately one and one-half hours at the victim's apartment; and hid in the bedroom closet. The state, by evidence adduced from the only surviving witness, proved that he pointed and cocked the gun; told the victim that he was going to shoot her; and that he did shoot her.

In a review of the record, it appears that the evidence was sufficient to support a conviction for murder in the first degree. The jury had enough evidence before it to find malice aforethought to substantiate the required intent. The jury was properly instructed as to the lesser included offense. They examined the evidence, and reached a verdict .... "[As] long as there is competent evidence from which the jury could reasonably conclude that the appellant was guilty as charged, this Court will not interfere with the verdict." *Booker v. State*, 644 P.2d 1075, 1076 (Okl.Cr.1982).

This record clearly indicates that the verdict is based upon, and is supported by substantive evidence. It must be allowed to stand.

Accordingly, the judgment and sentence of life imprisonment for Murder in the First Degree is Affirmed.